IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KENNETH W. BLAIR, )<br>)<br>Defendant. ) | 8:07CR210<br><br>REPORT AND<br>RECOMMENDATION |

This matter is before the court on the motion to suppress filed by defendant Kenneth W. Blair (Blair) (Filing No. 14). Blair is charged in the Indictment with possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g) (Count I) and a forfeiture count in violation of 18 U.S.C. §924(d) and 28 U.S.C. §2461(c). Blair seeks to suppress evidence obtained during a traffic stop by officers of the Omaha Police Department (OPD) on April 18, 2007, in Omaha, Nebraska.

The court held a hearing on the motion on September 10, 2007. Blair was present for the hearing along with his retained counsel, Kellie P. Asaka. The United States was represented by Assistant U.S. Attorney Frederick D. Franklin. The court heard the testimony of OPD Officers Bradley Nielsen (Officer Nielsen) and Sean Burnham (Officer Burnham). The court also received into evidence copies of two photographs (Exhibits 101 and 102). A transcript (TR.) of the hearing was filed on September 12, 2007 (Filing No. 51).

**FINDINGS OF FACT**

On April 18, 2007, Officers Nielsen and Burnham were assigned as a two-man crew to a marked police cruiser on a C shift patrol in the northeast precinct of Omaha, Nebraska (TR. 4-5). Around 10:45 p.m., the officers observed a white vehicle traveling at a high rate of speed (TR. 5). The officers followed the vehicle for a short while and observed the white vehicle roll through a stop sign at the intersection of 21st and Maple Streets (TR. 5). The officers approached the white vehicle from behind and activated the cruiser's rotator lights on top of the cruiser (TR. 6). The vehicle immediately turned into a residential

driveway where a passenger (Blair) got out of the vehicle and began moving to the rear of the residence (TR. 6). The officers stopped the police cruiser on the street in such a position to block the white vehicle in the driveway from leaving (TR. 6). Both officers immediately got out of the police cruiser and Officer Burnham gave loud verbal instructions to Blair to stop and return to the white vehicle in the driveway (TR. 6). Officer Nielsen approached the driver of the white vehicle in order to secure the scene (TR. 6). Blair ignored Officer Burnham's commands and moved to the side of a neighboring house (TR. 7). Officer Burnham followed Blair to the side of the house and ordered Blair to put Blair's hands up against the house (TR. 27). Blair resisted and Officer Burnham attempted to take Blair to the ground (TR. 27). Officer Nielsen heard Blair yelling that the officers were scaring Blair and Blair didn't know what the officers were doing (TR. 7). Officer Nielsen joined Officer Burnham in trying to subdue Blair (TR. 10). As Officer Burnham was attempting to use an arm bar to Take Blair to the ground, Officer Nielsen grabbed Blair by the right arm and assisted Officer Burnham pull Blair to the rear of the vehicle (TR. 10). Officer Nielsen saw Blair pull a handgun from his waistband and throw it under the vehicle (TR. 10). Officer Nielsen alerted Officer Burnham to the presence of the firearm and told Officer Burnham to disengage and to pull his weapon (TR. 10). Officer Burnham disengaged from the scuffle and drew his weapon (TR. 10). Officer Nielsen was then able to place Blair on Blair's stomach and handcuff him (TR. 10). The officers then recovered the Hi Point .45 caliber handgun which Blair had tossed under the vehicle (TR. 11).

During the scuffle, the driver of the white vehicle remained in the vehicle and got out after Blair was subdued and the officers ordered the driver out of the vehicle (TR. 12). The vehicle was searched and nothing was seized (TR. 12). The driver was cited for a stop sign violation and driving under an Iowa suspension (TR. 12). The driver was cited and released (TR. 12). Blair was placed in the police cruiser and identified (TR. 13). Blair was arrested and charged with being a felon in possession of a firearm, carrying of an unregistered firearm, and resisting arrest (TR. 12). Blair also had two active felony warrants, one from the Omaha Police Department and the other from Douglas County (TR. 28).

Officers Nielsen and Burnham testified it was OPD policy to have all passengers remain in a vehicle they stopped unless ordered out of the vehicle (TR. 8; 31). Officers Nielsen and Burnham testified that not knowing what a passenger of a stopped vehicle was going to do when the passenger immediately got out of the vehicle was an officer safety concern (TR. 8; 30).

## CONCLUSIONS OF LAW

Blair asserts the officers did not have probable cause to stop the vehicle in which Blair was a passenger. Officers Nielsen and Burnham testified the white vehicle had committed a traffic violation of failure to abide by a stop sign. **See** Neb. Rev. Stat. §§ 60-667, 60-6,148(2), and 60-6,123(4). "[A] police officer who personally observes a traffic violation has probable cause to stop the vehicle." ***United States v. $404,905.00 in U.S. Currency,*** 182 F.3d 643, 646 (8th Cir. 1999) citing ***Pennsylvania v. Mimms***, 434 U.S. 106, 109 (1977). The courts must give law enforcement officers "substantial latitude in interpreting and drawing inferences from factual circumstances." ***United States v. Washington***, 109 F.3d 459, 465 (8th Cir.1997). Thus, the officers had probable cause to stop the white vehicle by using the patrol cruiser's lights and by blocking the white car's exit from the residential driveway.

Blair asserts the officers illegally detained him as he was walking away from the stopped vehicle. It is OPD's policy to maintain control of a stopped vehicle situation by requiring occupants of the vehicle to remain with the vehicle until cleared. The officers were within their authority to order Blair to stop and return to the car when Blair was observed to immediately get out of the vehicle and walk briskly toward the rear of a residence. The OPD policy is entirely reasonable for the safety of everyone involved in a traffic stop. Blair ignored Officer's Burnham's command to return to the vehicle and resisted Officer Burnham when Officer Burnham approached Blair and touched him. Blair's conduct constituted an obstruction of a peace officer under Nebraska law, Neb Rev Stat. § 28-906(1). "The mere act of running away from law enforcement officers constitutes physical interference or obstacle within the meaning of this provision." ***United***

*States v. Sledge*, 460 F.3d 963, 967 (8th Cir. 2006) (**citing** *In Re Interest of Richter*, 226 Neb 874 (1987)).

Blair struggled with Officers Burnham and Nielsen resulting in Blair's arrest for resisting arrest in violation of Neb. Rev. Stat. § 28-904. Even assuming, *arguendo*, that Officer Burnham's initial contact with Blair constituted an illegal detention, Blair's struggle with the officers constituted grounds for his arrest. As stated by the Eighth Circuit:

> "In our circuit, resistance to an illegal arrest can furnish grounds for a second, legitimate arrest." *United States v. Schmidt*, 403 F.3d 1009, 1016 (8th Cir. 2005); **see, e.g.** *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) (holding "a defendant's response to even an invalid arrest ... may constitute independent grounds for arrest.") "When a defendant commits a new and distinct crime during an unlawful detention, the Fourth Amendment's exclusionary rule does not bar evidence of the new crime." *United States v. Hunt*, 372 F.3d 1010, 1012 (*th Cir. 2004).

*United States v. Sledge*, 460 F.3d at 966. Blair's arrest for resisting arrest is supported by the evidence and legal precedent.

Blair claims the officers used excessive force in attempting to subdue him and such excessive force should exclude any evidence subsequently seized, i.e., the firearm recovered from under the vehicle, as being in violation of the Fourth Amendment under *Graham v. Connor*, 490 U.S. 386, 394 (1989). Based upon Blair's uncooperative, spontaneous, and violent behavior, it took two police officers to wrestle him to the ground. One police officer was forced to draw his firearm when a firearm was observed. No firearm or other device was discharged to bring Blair under control. The court finds the force used by Officers Nielsen and Burnham to subdue Blair was "objectively reasonable under the particular circumstances." *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006) (**quoting** *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004)). The firearm recovered from under the vehicle was not procured in violation of Blair's Fourth Amendment rights.

Furthermore, Blair tossed the firearm under the car. His act was that of an abandonment. A seizure of abandoned property does not implicate the Fourth Amendment in that any expectation of privacy is forfeited upon the abandonment of the property. *United States v. Chandler*, 197 F.3d 1198, 1200 (8th Cir. 1999); *United States v. Tugwell*, 125 F.3d 600, 602, (*th Cir. 1997). In considering the totality of the evidence, it

4

is clear Blair abandoned any interest in the firearm when he threw it under the vehicle. The police officer's seizure of the firearm was lawful.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Blair's motion to suppress (Filing No. 14) be denied in its entirety.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 23rd day of October, 2007.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge